Brockenbrough, J.
It has undoubtedly been established, by a series of decisions, that where a defendant in execution under a ca. sa. has been discharged from his imprisonment by the direction or with the consent of the plaintiff, no action will ever again lie on the judgment on which the execution is founded, the judgment being considered as satisfied. Nor can any new execution ever issue on that judgment, even though the defendant was discharged on an express undertaking on his part, that he should be liable again to be taken in execution, on his failure to comply with the terms on which the discharge took place. Vigers v. Aldrich, 4 Burr. 2482. Jaques v. Withy, 1 T. R. 557. Tanner v. Hague, 7 T. R. 416. Blackburn v. Stupart, 2 East 243. Windrum v. Parker, 2 Leigh 361. This principiéis admitted by the supreme court of Massachusetts, but has been modified by that court. Thus, in the case of Little v. The Newburyport bank, 14 Mass. Rep. 443. it was decided, that if a prisoner in execution procure his liberation, under an agreement with his creditor to surrender himself upon certain terms, with which agreement he complies, and actually surrenders himself, and is again committed under the same execution before the return day thereof) he cannot ob *188 tain rélief from his imprisonment by audita querela. This decision seems to me to be reasonable; yet it would be premature to say that such is the law in this state. When a similar case shall arise, it will be time enough to settle the jaw Upon if. However it may be, where the party, having been temporarily discharged from execution on terms, voluntarily- surrenders himself under the same execution, there can be no doubt that the plaintiff who has discharged him, has lost his right of retaking him either under the old execution, or a new one.
In the case before us, Morris was in custody under a ca. sa. sued out by Cooper, and Noyes and Whitteker undertook that if the plaintiff would permit Morris to go a,t large and out of the-sheriff’s custody in order that he might go home, they would deliver Morris into jail and custody on the same execution, before the return day thereof, or that they would pay, and satisfy Cooper’s judgment' against Morris. How is this undei taking to deliver the body of the debtor to be understood ? It either means, that they will deliver him with his own consent, or by the process of the law, or by force. If their meaning was, that the delivery should be with the consent of the debtor, then there was nothing unlawful in this part of their undertaking: there was no violation of the peace involved in it, nor any violation of the rights of thé individual, for volenti non fit injuria. The undertaking of the defendants might be discharged by suóh voluntary delivery; but if they did not comply with that part of their undertaking, the alternative promise would be in force, and the defendants would be bound to pay the money. It is true, that if they had made such voluntary surrender, although they would have been discharged, a question might still have arisen between Morris the debtor and the plaintiff, whether the former should be discharged by audita querela, or by motion, or in any other way, in consequence of the established principle that the judgment was satisfied. But with that question these defendants would have had nothing to do: .they had promised, that they would'deliver him, and if they had actually done so with ■ his consent, their promise *189 would ,have been fulfilled. If this be the proper construetion of their undertaking, then they are bound to pay the money, not having complied with the former part of their undertaking. But then another question might arise in parol promises of this kind; namely, whether they come within the statute of frauds; but as in the case before us that point was expressly waived, it need not be here considered.
Another construction that may be given to the promise, is, that they undertook to deliver him by the authority, or by the process of the law, but without any actual application of force. It is possible they may have supposed, that they had the same right to deliver on this final process, that special bail have to deliver on mesne process. If such was their undertaking, then it was clearly against law, for there is no process by which such delivery could be made. In this view of the case, Da Costa v. Davis, 1 Bos. & Pull. 242. and Goodman v. Chase, 1 Barn. & Ald. 297. are strictly applicable. In the former case, the condition of the bond was that May, the debtor, who was discharged from execution, should pay the debt, or on default, that the obligees in the bond should surrender him so that he might be again taken in execution. The court said, that on the authority of Vigers v. Aldrich, the first part of the condition was void, being to render a prisoner in execution who was once discharged, and therefore as the other part had not been performed, the bond was forfeited. Besides, that where the condition of a bond is to do one of two things, shewing that one could not be performed, is no good reason for not having performed the other. There is but little difference between that case and the one before us. But the case of Goodman v. Chase is almost identical with this. The promise was, that in consideration that the plaintiff would permit the debtor to go out of the custody of the sheriff, the defendant would put him into the custody of the sheriff on the Saturday following, or in default thereof, that the defendant would pay the money. The court adjudged, that as the debtor was discharged from the judgment and execution, it was unlawful to return *190 him to custody, and as the defendant could not comply with that part of his promise, he must perform the alternative. It moreover decided, that it was an original and not a collateral promise, and had a sufficient consideration to support and was not within the statute of frauds.
The third construction which may be put upon this promise, is, that they will deliver the debtor against his consent, and by the application of force. If this construction be put on it, then it is a promise to commit a breach of the peace. Now, although it is good law, that where a condition is in the disjunctive, it is sufficient that either part be performed, Co. Litt. 225. a. and that where two alternative conditions are both lawful and possible, and one of them becomes impossible before the day of performance, the obligor shall be bound to perform the other. 1 Salk. 170, 2 Thom. Co. Litt. p, 59. marg. note, N, 1. yet that, I apprehend, is true only where neither condition involves the commission of some offence, for which a public prosecution may be carried on. Coke says,—“It is commonly holden that if the condition of the bond be against law, that the bond itself is void. But herein the law distinguisheth between a condition against law, for the doing of any act that is malum in se, and a condition against law, because it is either repugnant to the state, or against some maxim or rule in law: and, therefore, the common opinion is to be understood of conditions against law for the doing of some act that is malum in se.” Co. Litt. 206. b. In Mitchell v. Reynolds, 1 P. Wms. 189. the court lays down the following propositions : “ The instances of conditions against law, in a proper sense, are reducible under one of these heads, 1. Either to do something that is malum in se, or malum prohibitum: 2. to omit the doiug of something that is a duty: 3. to encourage such crimes and omissions. Such conditions as these the law will always, and without regard to circumstances,' defeat, being concernéd to remove all temptations and inducements to those crimes.” The late editor of Coke Littleton, in illustration of this doctrine, says, that there are four classes governed by this principle, which deserve con *191 sideration: 1. bonds given pro turpi causa: 2. bonds in restraint of trade: 3. marriage brocage bonds: and 4. bonds given on a consideration declared illegal by statute. 2. Thom. Co. Litt. p. 24. marg. note, P. Now, a bond given with a Condition that the obligor shall commit a breach of the peace, by assaulting, arresting and imprisoning one whom he has no legal authority to arrest and imprison, is a condition to perform an act malum in se, for which the party may be indicted, and the bond is therefore void. Nor do I think that the condition being in the alternative, that he wall do the act malum in se, or pay the money, would make the bond a good one, for the payment of the money depends on the non-performance of the illegal part of the condition, and there is a strong inducement on the part of the obligor to do the act malum in se, in order to avoid the payment of the money. The law, therefore, “ being concerned to remove all temptations and inducements to those crimes,” declares that a bond containing such an alternative condition is wholly void. ■ If I thought that this construction ought to be put on this undertaking, I should be of opinion that the plaintiff ought not to recover.
But I am of opinion, that such is not the natural construction of the promise. “Where there may be a way found out to perform the condition without a breach of the law, the condition shall be good; 1 P. Wms. 190. I am of opinion, that when the defendants promised, that, if the plaintiff would allow Morris to go at large, in order that he might go home, they would on a certain day deliver him into jail on the same execution,—they meant they would deliver him peaceably and with his own consent, and if they did not so deliver him, that they would pay the money. There was nothing, then, unlawful in either undertaking, and on the failure to perform the one, they became bound to perform the other. I think the judgment ought to be affirmed.
Carr and Brooke, J concurred. Judgment affirmed.